COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

June 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| NORMAN MAYES, et ux. | ) | KNOX COUNTY |
| | ) | 03A01-9706-CV-00203 |
| Plaintiffs-Appellants-Appellees | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLAUDE YOW, et ux. | ) | HON. HAROLD WIMBERLY, |
| | ) | JUDGE |
| Defendants-Appellants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLARD SCARBRO, et ux. | ) | |
| | ) | |
| Defendants-Appellees | ) | AFFIRMED AND REMANDED |


DONALD E. OVERTON OF KNOXVILLE FOR NORMAN MAYES, ET UX

GREGORY F. COLEMAN OF KNOXVILLE FOR CLAUDE YOW, ET UX

DAVID L. BUUCK and GLEN R. CLAIBORNE OF KNOXVILLE FOR WILLARD SCARBRO, ET UX


O P I N I O N


Goddard, P.J.


        This appeal results from a suit brought by Norman Mayes

and his wife, Ruth Mayes, against Claude Yow and his wife,

Frances Yow, Willard Scarbro and his wife, Cleo Scarbro, who was

added as a party Defendant subsequent to the filing of the original complaint, and Partners & Associates, Inc.

The Mayeses sought damages alleging that the Defendants created a continuing temporary nuisance by unlawfully channeling and discharging surface water from their higher property onto the Mayeses' lower property.

After a trial in July 1992, the jury returned a verdict in favor of the Defendants Scarbro and against the Defendants Yow and awarded damages in the sum of $400,000. The claim against the Defendant Partners & Associates, Inc., was settled prior to trial.

The Yows filed a motion for a new trial which, insofar as it contended the verdict of the jury was excessive, was granted by the Trial Court. A second trial began on April 22, 1996. However, during the course thereof the Trial Court declared a mistrial. The third trial occurred in August 1996 with a jury considering the damages for the period covered in the first trial, as well as liability and damages accruing thereafter. In the third trial the jury found damages for the first period--November 8, 1986, through July 9, 1992--in the amount of $268,769, and again found liability as to the Defendants Yow and assessed damages as to the second period--July 10, 1992, through August 28, 1996--at $229,183.

2

Both the Mayeses and the Yows appeal. The Yows appeal raises five issues as follows:

I. Whether the Trial Court erred by not ordering separate trials and by allowing the jury to consider both the issue of damages on retrial from the first trial of July, 1992, and the issue of causes of actions and damages arising subsequent to the first trial.

II. Whether the Trial Court erred by not limiting the trial to issues of causation and damages to the events, occurrences and transactions up to the time of the filing of the complaint.

III. Whether the jury's award is supported by credible proof and is in excess of the range of reasonableness.

IV. Whether the Trial Court erred by allowing the jury to speculate as to the amount of diminution of fair rental value allegedly suffered by the Plaintiffs when no evidence was presented to support the jury's verdict.

V. Whether the Trial Court erred by not charging the jury with the instructions requested by Defendants as outlined in Defendants' motion for new trial.

The Mayeses' appeal raises the following issue:

Whether or not the jury could have reached the verdict they did in finding for Defendants Scarbro in July 1992.

The testimony received in both trials is extensive and sharply disputed. Suffice it to say that there is material evidence that the Defendants Yow created and maintained the temporary nuisance as alleged by reason of improving their higher land by constructing a shopping center, motel and the like.

3

As to the first issue, the Yows argue that the Court committed prejudicial error by allowing the jury in the last trial to try the damages resulting to the Mayeses' property as a result of the finding of liability by the first jury.  They argue that the fact the jury knew that the Yows had already been found liable deprived them of a fair trial in that the jurors would be prejudiced in favor of the Mayeses by reason of this knowledge.

In the second trial the Yows introduced considerable evidence as to the improvements made subsequent to the first trial.  It would seem even if the jury was not specifically advised of the result of the first trial it could have easily deduced that the Yows conceded there was a problem or they would not have incurred the expense incident to their corrective action.

It would also appear that if the Yows had taken no corrective action after the first trial, the Mayeses might very well be entitled to a directed verdict as to liability on the theory of res judicata.

We conclude that trying the case as the Trial Judge did rested in his sound discretion and, under the facts of this case we find no abuse.

Apropos of the second issue, the Yows rely upon Harman v. Louisville, N.O. & T.R. Co., 87 Tenn. 614, 11 S.W. 703 (1889);

4

<u>Fox v. Corbitt</u>, 137 Tenn. 466, 194 S.W. 88 (1917); and <u>Henegar v. International Minerals & Chemical Corp.</u>, 209 Tenn. 355, 354 S.W.2d 69 (1962).

In <u>Harman</u> the plaintiff was suing a railroad because of a nuisance created in the use of its railroad tracks adjacent to the plaintiff's property. In the course of the opinion discussing the damages recoverable, the Court stated that each recovery should embrace "only the damages sustained up to the commencement of the action."

We first observe that apparently <u>Harman</u> is a dissenting opinion, and the majority opinion, which it appears is not published, held that because of a previous suit brought by the plaintiff, a suit where he recovered a judgment which was paid, the doctrine of <u>res judicata</u>, was applicable and his suit was dismissed on that account. Additionally, it does not appear that the question of the period for which the plaintiff could recover was at issue.

The second case, <u>Fox v. Corbitt</u>, also found recovery was limited to the date of the bringing of the suit, citing the dissenting opinion in <u>Harman</u>. We also note that in this case the period recovery might be allowed was likewise not at issue.

We also note that <u>Fox</u> holds that the rule in equity is different from that stated in <u>Harman</u>, and where the principal

5

relief is injunctive, damages may be recovered to the date of trial.  In the case at bar, however, although an injunction was sought for it was not, in our view, the principal relief sought. We say this because a preliminary hearing was held as to the issuance of an injunction which was denied by the Court and not made an issue on appeal.  Thus, we do not believe the awarding of damages to the date of trial could be predicated upon the rule in equity.

The case of Henegar v. International Minerals is the only relative recent case on the subject.  In this case the Court held that plaintiffs who had brought suit for a temporary nuisance to real estate for a period of October 1, 1957, to October 1, 1959, and later amended their declaration to reduce the period covered in the suit from October 1, 1957, to October 1, 1958, could not in a later suit recover for damages for the period deleted from the first suit.  It is true the trial court cited Harman with approval, but it appears that Henegar was decided principally on the basis of splitting a cause of action and res judicata rather than the rule in Harman.

Apropos of issues of two and three which question the sufficiency of the evidence, we note the land in question contains approximately 85 acres, 25 of which is within the floodway and not usable.  The remaining 60 acres, however, is usable, but before the property could be developed, it would be necessary to expend a substantial sum to raise the level of the

6

land above the flood plane before the property could be developed to its highest and best use. The cost of doing so, according to the proof, would be in excess of $2,000.000. Notwithstanding this substantial expenditure, the Mayeses expert witness as to value estimated the property would have a rental value of $378,000 per year, or $31,500 per month, and that in its present state, with the water problem present, would have a value only for agriculture which would be approximate $6000 per year or $500 per month, the monthly difference being $25,500. We also note that the expert who testified for the Yows does not dispute the Mayeses' expert as to the value of the property without a water problem, even though a substantial expenditure would have to be made before it could be developed. He did not purport to place a dollar value on the property as it presently stands, although he did agree it could only be used for agricultural purposes.

Thus, there is credible material evidence in the record that the property was depreciated by reason of the water problem. The jury awarded the sum of $268,769 as to the first period, which would amount to $3,950 per month, and $229,183 for the second period, or $4,540[1] per month. Both of the awards are well below the proof introduced.

Finally, we address the three special requests refused by the Trial Court, which are raised as issues in this appeal, as follows:

---

[1]     Both monthly figures are approximate.

"The defendants are not responsible for injuries which may be sustained by plaintiffs, caused by water diverted from its natural flow and into the road ditches by others for whose acts neither of the parties is responsible."

2

"The upper land owner has an easement for drainage of surface water in its flow of the lower land of an neighboring land owner.  If the lower land owner places an obstruction of any character upon his land that arrests or interferes with such natural drainage such that he has caused an injury to himself, then his own action has contributed to his damages and he is barred from recovery."

3

"A landowner whose property is in its natural state and when in its natural state is lower in elevation than an adjoining landowners property, such lower landowner must accept the natural flows of water from higher lands, so long as the water flows in the direction, speed, quality, and at *no greater peak rate of discharge or volumetric rate of flow* as it would in its natural state.  Such flows of water are not and cannot be a nuisance.  However, owners of higher land do have a duty not to interfere with the natural water runoff.  If the owner of higher land discharger water upon the lower landowner in a direction or at a speed or at *a greater peak rate of discharge or volumetric rate of flow* or quality different from the natural flow than the owner of such higher land has created a nuisance and is liable to the owner of the lower land for any damages to the property of the lower landowner that proximately result."  (Emphasis in brief of Yows.)

As to the first two requested charges, we believe the charge the Trial Court gave to the jury, hereinafter quoted, which tells the jury the Yows are only responsible for the diversion in water caused by them, which inferentially and, we think, sufficiently told the jury that the Yows would not be responsible for any water diversion not caused by them, nor for

any damage that might be occasioned by acts of others or of the Mayeses.

## Court's Charge

Now, what is a reasonable use of real estate land? What is a reasonable use of land which a landowner has a duty to accept, and whether or not a particular use is an unreasonable invasion of another landowner's use and enjoyment of their property is not established by exact rules, but depends upon the circumstances of the use as an ordinary prudent landowner would be expected to endure, considering the locality and character and surrounding, the nature and utility and the social value of the use. The extent and nature of the harm involved, the nature, the utility and the social value of the adjoining use and the enjoyment invalidated.

If a use of property is such that an ordinarily prudent landowner would be expected to endure, considering the circumstances, and is a use of property that an ordinarily prudent adjoining landowner should be reasonably expected to exercise under the circumstances, then it would not be a nuisances.

With respect to the subject matter of this lawsuit, the landowner whose property is in its natural undisturbed state, and whose property is lower than the adjoining land of a neighbor, must accept the natural flows of water from higher land. So long as the water flows in the direction, the speed, quality and volume as it would in its natural state. Such flows of water are not and cannot be a nuisance.

However, the owners of higher land have a duty under law not to interfere with the natural water runoff. If an owner of higher land discharges water upon a lower landowner in a direction or at a speed, or in larger volumes, that is unnatural quantities, or a quality different from natural flow, then the owner of such higher land has created a nuisance and is liable under law to the owner of the lower land for any damages to the property of the lower landowner that proximately result from this nuisance.

It does not matter in these situations whether an owner of the higher land used due care, extraordinary care or was negligent or complied or sought to comply with any existing government regulations, or any approved plan. The only question under law is whether the higher landowner has altered the natural flow of

9

the water, and is thereby caused injury to plaintiffs property.

A nuisance which can be corrected by the expenditure of labor or money is what is called in law a temporary nuisance.  If and when a temporary nuisance is found to exist by a preponderance of the evidence, the landowner of the property adversely effected may recover money damages for damages proximately caused by the nuisance in question.

As to the third rejected charge, counsel for the Yows concedes in his brief that the charge does not reflect the present state of Tennessee law when it speaks of "no greater peak of discharge for volumetric rate of flow," and that we should adopt the rule expressed in the charge rather than as adopted in Tennessee case law.  However, it is not the prerogative of an intermediate appellate court to disregard established substantive law.

We now turn to the issues raised by the Mayeses in their capacity as Appellants, which has hereinbefore been set out.

Our reading of the record persuades us there is material evidence from which the jury could find that the improvements made by the Scarbros did not increase the water flow from their property and did not damage the property of the Mayeses.  The proof also shows that the total acreage of the Scarbros was minuscule (52 acres) compared to the area (31,990 acres) draining onto the Mayeses property.

10

Finally, we note that the Mayeses did not file a motion for a new trial nor a motion for a judgment notwithstanding the verdict, nor for a judgment in accordance with their motion for a directed verdict in connection with the first trial. Under the provisions of Rule 3(e) of the Tennessee Rules of Appellate Procedure, their failure in this regard is fatal to the issue here raised.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgments and costs below. Costs of appeal are adjudged three-quarters against the Yows and their surety and one-quarter against the Mayeses and their surety.

                        _____
                        Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Don T. McMurray, J.